CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 17 2008

JOHN F. CORCORAN, CLERK
BY: S. Taylor
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

HINKLE OIL & GAS, INC.,

    Plaintiff,

v.

BOWLES RICE McDAVID,
GRAFF & LOVE, LLP, et al.,

    Defendants.

Case No. 7:07cv487

By: Hon. Michael F. Urbanski
United States Magistrate Judge

## MEMORANDUM OPINION and ORDER

This matter is before the court on plaintiff Hinkle Oil & Gas Co., Inc.'s ("Hinkle Oil") motion[1] to hold ALPS Insurance Company ("ALPS"), defendants' insurer, in civil contempt and for sanctions for ALPS' failure to appear in person at the mediation of this case on September 22, 2008, in contravention of the court's Settlement Conference Order.

In support of its motion, Hinkle Oil argues that it expended significant expense in having its counsel travel from California and its principals travel from California and Oklahoma to Roanoke for the mediation. Hinkle Oil seeks recovery of costs and fees in the amount of $17,353.61 incurred in attending the mediation. Hinkle Oil asserts that ALPS violated the court's Settlement Conference Order by not having an ALPS representative with authority to settle the case physically present at the mediation.

---

[1] Docket # 99.

For their part, defendants state that while it is true that the ALPS claims representative responsible for this case was not physically present at the mediation, ALPS did have a representative at the mediation in the person of local counsel retained specifically for that purpose, and defendant law firm Bowles, Rice, McDavid, Graff & Love ("Bowles Rice") had a managing agent present at mediation. Defendants further argue that because of the court's recent ruling on the merits of this case and Hinkle Oil's unreasonable settlement position, not having the Montana based ALPS claims representative physically present in Roanoke did not thwart an attainable settlement or otherwise harm Hinkle Oil.

I.

On July 16, 2008, the undersigned entered a Settlement Conference Order setting this case for mediation on September 22, 2008. The Settlement Conference Order is deliberately designed to maximize the likelihood of settlement by requiring the decision makers in a case to be physically present at the mediation and to be fully empowered to resolve the case without engaging in protracted communications with others not present at the mediation. The rationale behind this requirement is that the mediation process is both dynamic and hands on, allowing the parties in attendance to have direct personal contact with each other and with the Magistrate Judge functioning as mediator. It is the undersigned's experience that the settlement process is, at best, delayed, and, at worst, impeded, by not having all of the necessary decision makers physically present and engaged at the settlement conference. For these reasons, the Settlement Conference Order contains several key provisions.

Paragraph 1 requires all parties and their lead counsel to be present and to conduct discussions in good faith.

Case 7:07-cv-00487-SGW-mfu Document 105 Filed 10/17/08 Page 2 of 6 Pageid#: 3353

Paragraph 2 emphatically requires each party to "**BRING TO THE SETTLEMENT CONFERENCE A PERSON WITH FULL AND COMPLETE AUTHORITY TO SETTLE THE CASE, UP TO THE AMOUNT OF PLAINTIFF'S LAST DEMAND.**" This paragraph is intended to make sure that the decision makers are physically present at the mediation, and to avoid a circumstance of having to have separate telephone calls with others not present to obtain authority or make decisions about issues that arise during the mediation. At the same time, this paragraph is not intended to make any judgment about plaintiff's last demand or an appropriate settlement level. Rather, it is simply an effort to get the decision makers present and engaged in the settlement discussions without having to involve others located at parts distant. Likening the mediation to the stereotypical negotiation over the purchase of a new car, the court simply wants the sales manager present at the mediation instead of in a back room calling the shots. The court devotes substantial time and effort to getting cases settled at mediation and expects the parties in good faith to do the same.

To that end, Paragraph 3 states that "[n]o party representative or party shall appear at the conference via telephone without first obtaining Court approval."

Paragraph 4 requires further that "[t]he authority of persons in attendance shall include the ability to completely resolve all facets of the case without the need to seek or obtain authority from persons not in attendance. An insured party shall appear by a representative of the insurer with authority to negotiate and conclude a settlement. An uninsured corporate party shall appear by a party representative with authority to negotiate and conclude a settlement."

3

If the parties have a question about what the Settlement Conference Order requires of them, paragraph 8 encourages them to set up a conference call with the Magistrate Judge to address any questions, concerns or unusual circumstances.

## II.

In this case, Hinkle Oil claims that it was prevented from acquiring several oil and gas wells in a bankruptcy proceeding because of certain actions taken by defendant law firm Bowles Rice, and certain of its individual partners, in conflict with the defendants' obligation to zealously represent Hinkle Oil's interests. On September 17, 2008, five days before the scheduled mediation, the court entered a Memorandum Opinion granting summary judgment for defendants because of Hinkle Oil's inability to prove causation.[2] After entry of this opinion, the parties contacted the undersigned and suggested that the mediation be cancelled as it did not appear that settlement was possible. The undersigned denied the request to cancel the mediation, believing that each side continued to have significant reasons to settle this case.

Present at the mediation for Hinkle Oil were its counsel, Hugo Gerstl, from California, and corporate representatives Bruce and Richard Hinkle from Oklahoma and Paul Soares from California. Present at the mediation for Bowles Rice was its counsel William Bayliss from Richmond, Gerard Stowers, a managing agent of Bowles Rice from West Virginia, and local counsel retained by ALPS for the mediation. It is plain that ALPS, as insurer for Bowles Rice, did not meet its obligations under paragraphs 2, 3 and 4 of the Settlement Conference Order, as no ALPS representative with authority was present at the mediation.

---

[2] The opinion allowed Hinkle Oil to file an amended complaint asserting any claim that did not require Hinkle Oil to prove that defendants caused its failure to obtain the wells.

4

## III.

The question then becomes what sanctions, if any, are appropriate in this case due to ALPS' failure to comply with the terms of the Settlement Conference Order. A court may impose sanctions for civil contempt "to coerce obedience to a court order or to compensate the complainant for losses sustained as a result of the contumacy." Connolly v. J. T. Ventures, 851 F.2d 930, 932 (7th Cir. 1988); see also United States v. United Mine Workers of America, 330 U.S. 258, 303-04 (1947). Civil contempt is an appropriate sanction if there is an order of this Court which "set[s] forth in specific detail an unequivocal command" which a party has violated. Ferrell v. Pierce, 785 F.2d 1372, 1378 (7th Cir. 1986) (citation and internal quotation marks omitted); see also In re General Motors, 61 F.3d 256, 258 (4th Cir. 1995); Project B.A.S.I.C. v. Kemp, 947 F.2d 11, 16 (1st Cir. 1991) ("[C]ivil contempt will lie only if the putative contemnor has violated an order that is clear and unambiguous.").

To establish civil contempt, a movant must show each of the following elements by clear and convincing evidence:

(1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge;

(2) . . . that the decree was in the movant's "favor;"

(3) that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive) of such violations; and

(4) . . . that [the] movant suffered harm as a result.

5

Ashcraft v. Conoco, Inc., 218 F.3d 288, 301 (4th Cir. 2000) (quoting Colonial Williamsburg Found. v. The Kittinger Co., 792 F. Supp. 1397, 1405-06 (E.D. Va. 1992), aff'd, 38 F.3d 133, 136 (4th Cir. 1994)).

Under this standard, where the failure to have a decision maker with appropriate authority present at the mediation delays, impedes or thwarts resolution of the case at mediation and the other side is harmed thereby, a civil contempt sanction may be appropriate. That is not the case here, however. This is an unusual case in which summary judgment had been granted for defendant immediately prior to the mediation. Despite this significant event in the case, plaintiff's settlement position was such that no settlement was going to be possible at mediation, regardless of whether the ALPS representative was present or not. As such, because of the posture of the case and because the parties remained light years apart in settlement, in the judgment of the undersigned, it simply did not matter that the ALPS representative was not physically present. There was, in short, no harm to Hinkle Oil by not having the ALPS representative here in person. Under these most unusual circumstances, no sanctions are warranted in this case.

It is so **ORDERED**.

Enter this 17 day of October, 2008.

Michael F. Urbanski
United States Magistrate Judge